UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVID WILLIAMS,

     Applicant,

v.                                 CASE NO. 8:07-cv-1521-T-23TBM

SECRETARY, Department of Corrections,

     Respondent.

_____/

## O R D E R

Williams applies under 28 U.S.C. § 2254 for the writ of habeas corpus

(Doc. 44) and challenges his convictions for false application for a driver's license,

fraudulent use of personal identification, and scheming to defraud, for which he is

imprisoned for a total of fifteen years.  Williams pleaded *nolo contendere*.  Numerous

exhibits ("Respondent's Exhibit __") support the amended response.  (Doc. 51)

## I.  INTRODUCTION

This application challenges the validity of Williams's pleas of *nolo contendere* in

two separate criminal cases.  In 02-08819 a single-count information charged

Williams with "Scheme to Defraud."  (Respondent's Exhibit 19 at 63)  This order

refers to that criminal case as the "fraud case."  In 02-07376 a two-count information

charged Williams with "False Application for a Driver's License" and "Criminal Use

of Personal Identification Information."  (Respondent's Exhibit 19 at 1)  This order

refers to that criminal case as the "driver's license case."  Williams's change of plea

for each information occurred at the same hearing and proceeded as a single case on both direct appeal and in post-conviction.  Likewise, the federal application presents the two convictions in a single action.

Williams timely filed his application following his direct appeal but before he pursued state post-conviction proceedings.  As a consequence, his claims of ineffective assistance of counsel were unexhausted.  This federal action was stayed and administratively closed because, under Florida's two-year limitation, Williams could still timely file a Rule 3.850 motion for post-conviction relief to exhaust his claims of ineffective assistance of counsel.  Four years later this action was re-opened after the post-convictions proceedings concluded and after Williams amended his application. (Doc. 44)

## II.  FACTS

In the fraud case Williams was charged with defrauding at least six individuals by representing that he was purchasing distressed merchandise, which he would then sell and divide the profits with his investors.  At the change of plea hearing, the prosecutor recited the following factual basis to support the charge in the fraud case (Respondent's Exhibit 19 at 156–58):

> The offense had occurred between August 1999 through May of 2001 in various locations in Pinellas County, Florida. This defendant had befriended and gained the trust of six individual victims conning them to invest at different time periods in his business. He essentially told all of them that he was buying distressed merchandise from stores that were going bankrupt or closing and would then turnaround and sell them on the secondary market. For instance, that he was buying and selling from Radio Shack, Home Depot and the Dollar Tree. The

> victims would then invest in this with the expectation of getting
> their capital, plus a percentage of the profit back. The victims all
> signed promissory notes as to what money they invested and the
> percentage of their profit.
>
> During the course of the time frame the victims would go over
> their investments and continue to infuse additional capital into
> their investment sum. The Defendant also told them that he was
> doing off-market thrift shops . . . which were, in fact, businesses,
> [and] then he said he . . . was doing this nonprofit organizations
> for AIDS and cancer patients.
>
> Based on this and having befriended them, he was able to gain
> each of the victims' trust. Prior to paying off any of the victims,
> the defendant left town and has never repaid any capital or
> interest to any of these victims. The dollar amounts . . . to
> various victims . . . total . . . $499,555.

In the driver's license case Williams was charged with having unlawfully

obtained the personal identification of another person and used the information to

obtain a Florida driver's license.  Williams committed this criminal act shortly before

he fled from Pinellas County as described above in the fraud case.  At the change of

plea hearing, the prosecutor recited the following factual basis to support the charges

in the driver's license case (Respondent's Exhibit 19 at 127–28):

> [The] offense occurred on April 20th, 2001, at the Pinellas Park
> Department of Motor Vehicles on 62nd Avenue North in
> Pinellas Park, Pinellas County, Florida.
>
> This Defendant had been under investigation for a grand theft in
> Pinellas County where he had schemed several elderly victims
> out of hundreds of thousands of dollars. After taking the victim's
> money, he disappeared from Pinellas County which started the
> grand theft investigation. We later learned that this Defendant
> was possibly down in Fort Lauderdale because the Defendant's
> ex-girlfriend contacted the Sheriff's Office because he was —
> someone was trying to get credit cards using her Social Security
> number down in Fort Lauderdale.

> Basically they were able to track down the tag on a vehicle and were able to learn that this Defendant, on [April 20, 2001], walked into the DMV Office in Pinellas Park and got a driver's license in the name of James Bruce Sterling. The Defendant previously had a driver's license in his own name, Terry Munsen . . . which was obtained on [April 4, 1999]. The photographs on both the DLs in the name of Terry Munsen and James B. Sterling were of the exact same person where he had used the date of birth of James B. Sterling and the Social Security number of James B. Sterling.
>
> The detective was able to track down Mr. Sterling in San Diego who had . . . his own California DL and a totally different picture. Sterling was contacted. He advised that he did not know Terry Munsen at all and never authorized him to use his ID. It was at that time determined that his true name was David Williams.

Williams offered no objection to the above facts when he pleaded *nolo contendere* in both cases.

### III.  *NOLO CONTENDERE* PLEA

A conviction based on a plea of *nolo contendere* is reviewed the same as a conviction based on a guilty plea.  *Wallace v. Turner*, 695 F.2d 545, 548 (11th Cir. 1982).  *Tollett v. Henderson*, 411 U.S. 258, 267 (1973), holds that a guilty plea waives a non-jurisdictional defect:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

This waiver of rights precludes most challenges to the conviction.  *See e.g., United States v. Patti*, 337 F.3d 1217, 1320 (11th Cir. 2003) ("Generally, a voluntary,

unconditional guilty plea waives all non-jurisdictional defects in the proceedings."),

and *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) ("A defendant who

enters a plea of guilty waives all non-jurisdictional challenges to the constitutionality

of the conviction, and only an attack on the voluntary and knowing nature of the plea

can be sustained.").  A guilty plea waives a claim of ineffective assistance of counsel

based on a pre-plea event.

> In his habeas petition, Hutchins alleges that his trial counsel was
> ineffective for failing to explicitly define and advise him of a
> statute of limitations defense prior to advising him to waive that
> defense and plead guilty.  Hutchins's voluntary guilty plea,
> however, waived any ineffective assistance of counsel claim.

*Hutchins v. Sec'y, Dep't of Corr.*, 273 Fed. App'x 777, 778 (11th Cir.), *cert. denied*,

555 U.S. 857 (2008).  Consequently, the entry of a guilty plea waives a claim (other

than a challenge to the court's jurisdiction or a challenge to the voluntariness of the

plea), including both a substantive claim and a purported failing of counsel that

occurred before entry of the plea.  "[T]he representations of the defendant . . . [at the

plea proceeding] as well as any findings made by the judge accepting the plea,

constitute a formidable barrier in any subsequent collateral proceedings.  Solemn

declarations in open court carry a strong presumption of verity."  *Blackledge v. Allison*,

431 U.S. 63, 73–74 (1977).  Williams's allegations are in direct conflict with his

statements during the plea colloquy.  Statements during a plea colloquy are presumed

true.  *See United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994).

# IV.  STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA")

governs this proceeding.  *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th

Cir. 1998), *cert. denied*, 531 U.S. 840 (2000).  Section 2254(d), which creates a highly

deferential standard for federal court review of a state court adjudication, states in

pertinent part:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the
> merits in State court proceedings unless the adjudication of the
> claim —
>
> > (1) resulted in a decision that was contrary to, or
> > involved an unreasonable application of, clearly
> > established Federal law, as determined by the
> > Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an
> > unreasonable determination of the facts in light of
> > the evidence presented in the State court
> > proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), the Supreme Court

interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a
> federal habeas court to grant a state prisoner's application for a
> writ of habeas corpus with respect to claims adjudicated on the
> merits in state court.  Under § 2254(d)(1), the writ may issue only
> if one of the following two conditions is satisfied — the state-court
> adjudication resulted in a decision that (1) "was contrary to . . .
> clearly established Federal Law, as determined by the Supreme
> Court of the United States" or (2) "involved an unreasonable
> application of . . . clearly established Federal law, as determined
> by the Supreme Court of the United States."  Under the "contrary
> to" clause, a federal habeas court may grant the writ if the state
> court arrives at a conclusion opposite to that reached by this Court

> on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 693 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. at 694. A federal court must afford due deference to a state court's decision. "AEDPA prevents

defendants — and federal courts — from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

In a *per curiam* decision without a written opinion the state appellate court on direct appeal affirmed Williams's convictions and sentence. (Respondent's Exhibit 14) Similarly, in another *per curiam* decision without a written opinion the state appellate court affirmed the denial of Williams's subsequent Rule 3.850 motion to vacate. (Respondent's Exhibit 34) The state appellate court's *per curiam* affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby*, 538 U.S. 906 (2003). *See also Richter*, 131 S. Ct. at 784–85 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."), and *Bishop v. Warden*, 726 F. 3d 1243, 1255–56 (11th Cir. 2013) (describing the difference between an "opinion" or "analysis" and a "decision"

or "ruling" and explaining that deference is accorded the state court's "decision" or "ruling" even if there is no "opinion" or "analysis").[1]

Review of the state court decision is limited to the record that was before the state court:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court.

*Pinholster*, 131 S. Ct. at 1398.  Williams bears the burden of overcoming by clear and convincing evidence a state court factual determination.  "[A] determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact.  *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001).  The state court's rejections (Respondent's Exhibits 25 and 30) of Williams's post-conviction claims warrant deference in this case.

---

[1] Contrary to Williams's contention, deference is entitled to a *per curiam* decision without a written opinion.  Williams confuses the distinction between a *per curiam* decision's lack of precedential value to other cases and the controlling nature of the decision in the case the decision decides.

The application asserts four grounds for relief.  A theme that runs throughout most of the application is that James B. Sterling had authorized Williams to use his identification, that law enforcement falsified information regarding the authorization, and that trial counsel was ineffective in not adequately investigating the authorization. The first ground asserts claims that were resolved in the state post-conviction proceeding, specifically, numerous allegations of ineffective assistance of counsel. The remaining three grounds involve pre-plea and direct appeal issues, specifically, that Williams was denied counsel on direct appeal and that the primary investigating detective both falsified information and falsely testified.  This order addresses the pre-plea and direct appeal issues before the post-conviction issues.

## V.  GROUNDS FOR RELIEF

### A.  Non-Ineffective Assistance Claims

**Grounds Three and Four:**

In ground three Williams alleges that the investigating detective falsified "the initial warrant[,] never sat down and interviewed James B. Stirling on the fact that he gave me his birth certificate[, and] falsified the parties involved and the amounts of money involved."  In ground four Williams alleges that the investigating detective "falsified the grounds and facts for the arrest warrant," specifically, that the detective "never sat down and interviewed James B. Stirling . . . ."  The respondent correctly asserts two reasons why Williams is entitled to relief under neither ground.

First, review under Section 2254 is limited to alleged violations of a federally protected right.  "The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  Williams asserts the violation of no constitutional right, however, these allegations against the investigating detective are also asserted as part of Williams's claims of ineffective assistance of counsel.  Nevertheless, the allegations do not assert a separate claim that Williams can pursue under Section 2254.

Second, even if the allegations could assert a separate claim, Williams's entry of a plea of *nolo contendere* waived the claim.  *See McMann v. Richardson*, 397 U.S. 759, 766 (1970) (holding that a plea waives the right to trial and, therefore, waives the "right to contest the admissibility of any evidence the State might have offered against the defendant").

**<u>Ground Two:</u>**

Williams alleges that he was denied the right to counsel on direct appeal. Williams admits that he was appointed a member of the public defender's office to represent him on appeal, but because he disagreed with appellate counsel's strategy, counsel moved to withdraw as Williams requested.  (Respondent's Exhibits 1 and 2) The appellate court granted Williams's request for counsel to withdraw. (Respondent's Exhibits 4 and 5)  Williams's subsequent motion for the appointment

of counsel not associated with a public defender's office was denied and Williams filed a *pro se* opening brief.  (Respondent's Exhibits 6, 7, and 11)

Although a "State must provide counsel for the indigent on his first appeal as of right," *Douglas v. California*, 372 U.S. 353 (1963), that right guarantees neither "a 'meaningful relationship' between an accused and his counsel," *Morris v. Slappy*, 461 U.S. 1, 14 (1983), nor the "right to representation by an attorney he cannot afford." *Wheat v. United States*, 486 U.S. 153, 159 (1988).  A indigent who dismisses his appointed counsel and proceeds *pro se* "cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'" *Faretta v. California*, 422 U.S. 806, 835, n.46 (1975).

Williams was provided with appellate counsel, whom he chose to dismiss. Consequently, Williams was not denied counsel on direct appeal.

## B.  Ineffective Assistance Claims

Williams claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (*quoting Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)).  *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance

> of counsel claims.  According to *Strickland*, first, the defendant
> must show that counsel's performance was deficient. This
> requires showing that counsel made errors so serious that
> counsel was not functioning as the "counsel" guaranteed the
> defendant by the Sixth Amendment. Second, the defendant must
> show that the deficient performance prejudiced the defense. This
> requires showing that counsel's errors were so serious as to
> deprive the defendant of a fair trial, a trial whose result is
> reliable.  *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent prejudice.  *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds.").  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.  "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Williams must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the

judgment." 466 U.S. at 691–92. To meet this burden, Williams must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91. Williams cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (*quoting Burger v. Kemp*, 483 U.S. 776, 794 (1987)). How extensive of an investigation that counsel

must perform was recently addressed in *Hittson v. GDCP Warden*, 759 F.3d 1210, 1267

(11th Cir. 2014), *cert. denied sub nom., Hittson v. Chatman*, 135 S. Ct. 2126 (2015):

> [W]e have explained that "no absolute duty exists to investigate
> particular facts or a certain line of defense." *Chandler*, 218 F.3d
> at 1317. "[C]ounsel has a duty to make *reasonable* investigations
> or make a *reasonable* decision that makes particular
> investigations unnecessary." *Strickland*, 466 U.S. at 691, 104
> S. Ct. at 2066 (emphasis added). "[C]ounsel need not always
> investigate before pursuing or not pursuing a line of defense.
> Investigation (even a nonexhaustive, preliminary investigation)
> is not required for counsel reasonably to decline to investigate a
> line of defense thoroughly." *Chandler*, 218 F.3d at 1318. "In
> assessing the reasonableness of an attorney's investigation . . . a
> court must consider not only the quantum of evidence already
> known to counsel, but also whether the known evidence would
> lead a reasonable attorney to investigate further." *Wiggins*, 539
> U.S. at 527, 123 S. Ct. at 2538.

*See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (counsel has no duty to raise a

frivolous claim).

Although the *Strickland* standard controls a claim that counsel was ineffective in

recommending that a client plead guilty, *Hill v. Lockhart*, 474 U.S. 52 (1985), *Agan v.

Singletary*, 12 F.3d 1012 (11th Cir. 1994), greater evidence is needed to prove both

deficient performance and prejudice if the client pleads guilty.  "[C]ounsel owes a

lesser duty to a client who pleads guilty than to one who decided to go to trial, and in

the former case counsel need only provide his client with an understanding of the law

in relation to the facts, so that the accused may make an informed and conscious

choice between accepting the prosecution's offer and going to trial." *Wofford v.

Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984).  And to prove prejudice, "the

defendant must show that there is a reasonable probability that, but for counsel's

errors, he would not have pleaded guilty and would have insisted on going to trial."
*Hill v. Lockhart*, 474 U.S. at 59.

Williams must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  Sustaining a claim of ineffective assistance of counsel is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly so.'"  *Richter*, 131 S. Ct. at 788.  *See also Pinholster*, 131 S. Ct. at 1410 (An applicant must overcome this "'doubly deferential' standard of *Strickland* and the AEDPA."), *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding."), and *Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim — which is governed by the deferential *Strickland* test — through the lens of AEDPA deference, the resulting standard of review is "doubly deferential."), *cert. denied*, 134 S. Ct. 191 (2013).

In summarily denying Williams's motion for post-conviction relief, the state court specifically recognized that *Strickland* governs a claim of ineffective assistance of

counsel.  (Respondent's Exhibit 25)  Because the state court rejected the claims based on *Strickland*, Williams cannot meet the "contrary to" test in Section 2254(d)(1). Williams instead must show that the state court unreasonably applied *Strickland* or unreasonably determined the facts.  In determining "reasonableness," a federal application for the writ of habeas corpus authorizes determining only "whether the state habeas court was objectively reasonable in its *Strickland* inquiry," not an independent assessment of whether counsel's actions were reasonable.  *Putnam v. Head*, 268 F.3d 1223, 1244, n.17 (11th Cir. 2001), *cert. denied*, 537 U.S. 870 (2002). The presumption of correctness and the highly deferential standard of review requires that the analysis of each claim begin with the state court's analysis.

**Ground One:**

The respondent fairly describes Williams's claims of ineffective assistance of counsel as "eighteen one line claims of how his counsel was ineffective [with] no factual basis for any of his claims [except] one vague statement per claim."  (Doc. 51 at 25–26)  The post-conviction court organized the claims into five groups, labeled as "Grounds I–V," an organization that both Williams followed in his amended motion for post-conviction relief and the post-conviction court retained when it denied the amended motion for post-conviction relief.  (Respondent's Exhibits 23–25)[2]  The post-conviction court summarily denied four of the groups of claims as insufficiently

---

[2]  To the extent that the federal application might assert a factual allegation of deficient performance beyond what Williams presented to the state courts, a new claim is both unexhausted and procedurally defaulted. Williams's federal review is necessarily limited to what he presented to the state courts.

pleaded for the following reasons (Respondent's Exhibit 25 at 3–6) (citations to the

record omitted):

> Ground I
>
> First, the Defendant alleges that his counsel was ineffective for failing to investigate his case and file a motion to suppress his alleged confession. The Defendant asserts that he asked his counsel to file this motion, but counsel failed to listen to the facts in his case. He claims that Detective Cruise, a detective assigned to his case, lied and withheld the Defendant's real statement that he bought truckloads of merchandise below cost. The Defendant alleges that had counsel investigated his claims and filed the motion to suppress, he would have proceeded to trial.
>
> Despite the Court's Order granting the Defendant leave to amend to file a facially sufficient claim, the Defendant has still failed to allege prejudice. In his claim, the Defendant fails to indicate with any degree of specificity what "claims" he is referring to, how those claims relate to his case, or how such failure to investigate them resulted in prejudice. The Defendant also fails to allege upon what basis counsel would have filed a motion to suppress. From the record, it appears that the Defendant gave a post-*Miranda* confession to the crimes. Furthermore, the Defendant does not explain in what way he was prejudiced by counsel's alleged deficiencies. As noted above, mere conclusory allegations are not enough to establish a *prima facie* case based on a legally valid claim. *See Griffin*, 866 So. 2d at 9. Moreover, the record clearly demonstrates that the Defendant did not want to go to trial, but rather took an early plea. During the motion hearing, counsel stated that the Defendant had asked him to schedule the change of plea hearing even though they just recently got discovery materials. Counsel stated that the Defendant wished to dispose of this case and return to Arkansas where he was serving a seventeen-year sentence in Federal prison. In light of the record, and since the Defendant already had one opportunity to amend his facially sufficient claim, but failed to cure the pleading defect, this Ground is now denied.
>
> . . . .

Ground III

The Defendant alleges that counsel was ineffective for failing to interview the list of witnesses he provided. The Defendant asserts that he gave counsel a list of potential witnesses, including Abdullah Ahmed, John Chen, Bill Bradley, Jerry Gold, and Sam Washington. He alleges that counsel never contacted these witnesses, some of which were alibi witnesses. The Defendant alleges that this forced him to plea no contest instead of proceeding to trial.

Despite the Court's Order granting the Defendant leave to amend to file a facially sufficient claim, the Defendant has still failed to satisfy *Nelson v. State*, 875 So. 2d 579 (Fla. 2004). The Defendant does not allege with any specificity what these witnesses would have testified about or that they were available to testify. Furthermore, the Defendant again fails to allege how he was prejudiced by counsel's alleged deficiency. Since the Defendant already had one opportunity to amend his facially sufficient claim, but failed to cure the pleading defect, this Ground is now denied.

Ground IV

The Defendant alleges that counsel was ineffective for failing to object to the Defendant being allowed to wear a jumpsuit to court. He asserts that the other inmates were permitted to wear street clothes when they appeared in court. The Defendant claims that anyone, especially judges, who see a person wearing a jail jumpsuit automatically judge that person to be guilty. He claims that because counsel failed to get the Defendant a suit to wear to court he was prejudiced and would have proceeded to trial.

The Defendant's claim is without merit and is facially insufficient. In this claim, the Defendant makes conclusory and speculative allegations such that he "would have been acquitted" and that "especially Judges see a person wearing a jail jumpsuit automatically judge that person to be guilty." Such allegations cannot be the basis for post-conviction relief. *See Bass v. State*, 932 So. 2d 1170, 1172 (Fla. 2d DCA 2006).

Additionally, the Defendant was not required to go to trial in his jail jumpsuit; rather, he opted to take a plea very early on in his case. The record demonstrates that the Defendant requested his

counsel to calendar the change of plea at an early date so as to dispose of his Florida cases in an expeditious manner. At this point in the Defendant's case, the trial date was still three months away. Additionally, only two months and fourteen days passed between the Defendant's advisement in these cases and his plea of *nollo contendere*. Therefore, the Defendant's attorney could not be deficient for failing to secure street clothes for a trial that was uncertain to happen since the Defendant wanted to take an early plea, nor could counsel be deficient in failing to secure street clothes when a trial date was still months away. Moreover, the Defendant does not claim that counsel threatened that he would have to wear his jail clothes into court. It is clear the Defendant was not prejudiced by counsel's alleged failure because there was no evidence that the Defendant would have been required to wear his jail clothing during trial nor was the Defendant ever compelled to stand trial in his prison jumpsuit. *See Torres-Arboledo v. State*, 524 So. 2d 403 (Fla. 1988). The Defendant has failed to allege sufficient prejudice pursuant to *Strickland*. Consequently, this Ground is denied.

Ground V

Lastly, the Defendant alleges that his counsel failed to properly advise him about his no contest plea. He asserts that he was lied to, pressured, and the material facts were misrepresented in order to induce him to enter a plea. Specifically, the Defendant claims that counsel took out her anger about issues she had with her own father on the Defendant. He claims that she spent "90% of the twenty minutes she was with me bitching about how much I was like her father." He also alleges that her animosity towards him forced him to enter a plea. He claims that had he had an attorney to present his defense and investigate the facts, the Defendant would have proceeded to trial.

As stated above in Ground I, the Defendant has again failed to amend to file a facially sufficient claim. In this Ground, the Defendant fails to allege prejudice. The Defendant has failed to show how counsel's allegedly bad relationship with her father prejudiced him. This claim is conclusory and conclusory allegations are not enough. *See Griffin*, 866 So. 2d at 1. Additionally, the plea colloquy at the change of plea hearing conclusively refutes the Defendant's claim. He stated in open court that he was entering his plea freely and voluntarily. Therefore, this Ground is denied.

The post-conviction court initially denied all of the grounds as insufficiently pleaded.  The appellate court remanded for the post-conviction court to address more fully the "Ground II," which the post-conviction court denied on remand as follows (Respondent's Exhibit 30 at 2) (citations to the record omitted):

> [T]he Defendant claims that counsel was ineffective for failing to present any defense on his behalf. The Defendant claims that he told counsel that he was innocent of stealing the victim's identity. He claims that he had obtained the victim's consent to use the victim's personal information. He claims that counsel failed to verify his assertions. The Defendant asserts that counsel failed to actively advocate the Defendant's case or prepare for trial. He further alleges that had counsel done so, he would have gone to trial.
>
> The Defendant's claim is directly refuted by the record. The Defendant did not obtain consent from the victim to use his personal information. Therefore, consent would not have been a viable defense.

As discussed earlier under "III. *Nolo Contendere* Plea," each of these allegations of deficient performance occurred before Williams pleaded *nollo contendere* and, as a consequence, each claim is waived.  The transcript from the plea hearing shows that, for both the fraud charge and the driver's license charge, Williams represented that he was "satisfied with [counsel's] services." (Respondent's Exhibit 19, vol. II at 127 and 155)  The transcript discloses that Williams was singularly focused on convincing the judge to recommend that his state sentence run concurrently with his federal sentence.  Despite Williams's persistence, the state judge held steadfast in denying Williams's request for a recommendation that the state sentence run concurrently with the federal sentence.  (Respondent's Exhibit 19, vol. II at 134–40 and 150–52)  The

state court reasonably applied *Strickland* in determining that Williams failed to prove both deficient performance and resulting prejudice.

To summarize, Williams fails to meet his burden to show that the state court's decision was either an unreasonable application of controlling Supreme Court precedent or an unreasonable determination of fact. As *Burt v. Titlow*, 134 S. Ct. 10, 15–16 (2013), recognizes, this burden is very difficult to meet:

> Recognizing the duty and ability of our state-court colleagues to adjudicate claims of constitutional wrong, AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires "a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. ___, ___, 131 S. Ct. 770, 786–787, 178 L. Ed. 2d 624 (2011). "If this standard is difficult to meet" — and it is — "that is because it was meant to be." *Id.*, at ___, 131 S. Ct., at 786. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunctio[n]" for which federal habeas relief is the remedy. *Id.*, at___, 131 S. Ct., at 786 (internal quotation marks omitted).

Accordingly, Williams's amended application for the writ of habeas corpus (Doc. 44) is **DENIED**.  The clerk must enter a judgment against Williams and close this case.

### DENIAL OF BOTH
### A CERTIFICATE OF APPEALABILITY
### AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Williams is not entitled to a certificate of appealability ("COA").  A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his application.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first

issue a COA.  Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right."  To merit a COA, Williams must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise.  *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001).  Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Williams is entitled to neither a COA nor leave to appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**.  Leave to appeal *in forma pauperis* is **DENIED**.  Williams must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on March 7, 2016.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE